# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) ) | No. 1:00-cr-00159 (RCL) |
| DERREK ARRINGTON,<br>　　　Defendant. | ) ) ) ) | |

## MEMORANDUM

Defendant Derrek Arrington seeks a court order modifying his sentence under 28 U.S.C. § 2255. He looks for relief in the holding of *Johnson v. United States*, 135 S. Ct. 2551 (2015). The *Johnson* Court held that the residual clause defining "violent felony" under the Armed Career Criminal Act (ACCA) was unconstitutionally vague. Arrington was sentenced pursuant to then-mandatory guidelines that contained an identical residual clause defining "crime of violence." If the ACCA residual clause is unconstitutionally vague, the logic goes, so too is the residual clause under the mandatory sentencing guidelines. The government objects to all this and more. It says that Arrington's claim is untimely and procedurally defaulted, that *Johnson* did not apply to the mandatory sentencing guidelines, that it cannot apply to the guidelines retroactively anyways, and that in any event Arrington's sentence was still valid under other, unchallenged clauses within the guidelines.

### I.　　BACKGROUND

In September of 2000, a jury convicted Arrington of assaulting a federal officer with a dangerous weapon, in violation of 18 U.S.C. § 111(a) and (b), and unlawful possession of a firearm by a convicted felon, in violation 18 U.S.C. § 922(g). Def.'s Suppl. Mot. Vacate 4, ECF No. 177. Because Arrington had already been convicted of two separate armed robbery offenses—one in Maryland and one in

1

Washington, D.C.—Judge Robertson sentenced him as a "career offender" under the mandatory guidelines. *Id.* at 5–6. The career offender designation raised the sentencing guideline range, and Arrington received the statutory maximums for his § 111 and § 922 convictions—twenty years in all. *Id.* at 7. He appealed, but the D.C. Circuit affirmed. *United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002). He filed a previous § 2255 motion, which was denied. Def.'s Suppl. Mot. Vacate 8–9, ECF No. 177. In June of 2016, he filed this second § 2255 motion. Emerg. Suppl. Mot., ECF No. 174.

**II.     DISCUSSION**

Arrington's motion relies on the Supreme Court's 2015 holding in *Johnson*. There, the Court considered whether one of the clauses defining "violent felony" under the ACCA was unconstitutionally vague. *Johnson*, 135 S. Ct. at 2555. The statute defined a violent felony as:

> any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

18 U.S.C. § 924(e)(2)(B) (emphasis added).

According to the Court, the italicized residual clause was indeed void for vagueness. *Johnson*, 135 S. Ct. at 2563. "Two features of the residual clause conspire to make it unconstitutionally vague." *Id.* at 2557. First, it "leaves grave uncertainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* And second, it "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." *Id.* at 2558. In other words, the clause invited unpredictable and arbitrary enforcement.

Two years later, the Court expounded on *Johnson* in *Beckles v. United States*, 137 S. Ct. 886 (2017). In considering a vagueness challenge to the *advisory* sentencing guidelines, the Court looked to "the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement" *Id.* at 894. Unanimously, the Court distinguished the advisory guidelines' residual clause from its carbon copy struck down in *Johnson*. *Id.* at 897. Advisory sentencing guidelines, according to the Court, are fundamentally different from the statute at issue in *Johnson* and are not subject to due process vagueness challenges. *Id.* The Court was satisfied that notice is adequately provided by the statutory ranges that the guidelines operate within. *Id.* at 894. Prohibited conduct and its spectrum of associated punishment is already publicized to would-be defendants—the guidelines merely advise a judge within that spectrum. *See id.* at 895 ("[T]he legally prescribed range *is* the penalty affixed to the crime." (citing *Alleyne v. United States*, 570 U.S. 99, 112 (2013))). Arbitrary enforcement concerns are likewise misplaced—the guidelines are not regulations to be enforced at all, but rather conventions to be consulted. *Id.* at 894.

Unlike the ACCA, the advisory guidelines do not "fix the permissible sentences" for crimes. *Id.* at 892. When Arrington was sentenced, however, the sentencing guidelines were "mandatory and binding on all judges." *United States v. Booker*, 543 U.S. 220, 233 (2005). Departures were rarely available. *Id.* at 234. In 2005, the Supreme Court in *Booker* struck down the "mandatory" portions of the sentencing statute, rendering the guidelines merely advisory. *Id.* at 259. The clause at issue in *Beckles* is the very same one Arrington now confronts, the only difference being the mandatory force of the guidelines during Arrington's sentencing. While *Beckles* foreclosed challenges to the clause under the advisory regime, it did not decide whether its holding extended to sentences imposed under the mandatory guidelines. Concurring in *Beckles*, Justice Sotomayor pointed this out:

> The Court's adherence to the formalistic distinction between mandatory and advisory rules at least *leaves open the question* whether defendants sentenced to terms of imprisonment before our decision in [*Booker*]—that is, during the period in which the Guidelines did "fix the permissible range of sentences,"—may mount vagueness attacks on their sentences.

3

> *That question is not presented by this case and I, like the majority, take no position on its appropriate resolution.*

*Beckles*, 137 S. Ct. at 903 n.4. (Sotomayor, J., concurring) (emphasis added) (internal citations omitted).

The government cites Justice Sotomayor's language as support for its assertion that Arrington's motion is untimely. Gov't Opp'n 14, ECF No. 183. After all, how can *Johnson*'s extension to the mandatory guidelines be both an established right and an open question? Under § 2255, defendants have a one-year window to file a motion, with four separate triggers that will start or renew the limitations period. 28 U.S.C. § 2255(f). The first measuring event is "the date on which the judgment of conviction becomes final." *Id.* § 2255(f)(1). Arrington's conviction became final on March 3, 2003—the date his petition for certiorari was denied. *Arrington v. United States*, 537 U.S. 1241 (2003). Therefore Arrington relies on another measuring event: "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3). "An applicant has one year from the date on which the right he asserts was initially recognized by this Court." *Dodd v. United States*, 545 U.S. 353, 357 (2005). Arrington filed his § 2255 motion within one year of *Johnson*, which he claims restarted his statute of limitations under (f)(3). Emerg. Suppl. Mot., ECF No. 174. Put simply, whether Arrington's motion is timely turns on whether *Johnson* recognized a right not to be sentenced under the mandatory guidelines' residual clause. Does *Johnson* establish a broad principle, or is it cabined to statutes more closely resembling the ACCA?

III. **ANALYSIS**

Most circuits have weighed in on this question, and the tally is lopsided. The Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits do not recognize *Johnson* as controlling the constitutionality of the mandatory sentencing guidelines' residual clause. *United States v. Green*, 898 F.3d 315, 321 (3d Cir.

2018); *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017); *United States v. London*, 2019 WL 4065601 (5th Cir. Aug. 29, 2019); *Raybon v. United States*, 867 F.3d 625 (6th Cir. 2017); *Russo v. United States*, 902 F.3d 880 (8th Cir. 2018); *United States v. Blackstone*, 903 F.3d 1020 (9th Cir. 2018); *United States v. Greer*, 881 F.3d 1241 (10th Cir.). Only the Seventh Circuit has affirmatively disagreed. *Cross v. United States*, 892 F.3d 288 (7th Cir. 2018). The First Circuit and this Circuit have faced similar cases but ultimately resolved them on grounds other than timeliness. *Moore v. United States*, 871 F.3d 72 (1st Cir. 2017); *United States v. Hicks*, 911 F.3d 623 (D.C. Cir. 2018) (2019). *Beckles* looms large in the opinions as distinguishing sentencing guidelines from statutory ranges and confirming in concurrence that the key question is "le[ft] open." *Beckles*, 137 S. Ct. at 903 n.4.

This Court joins the bandwagon. *Johnson* concerned a statute that fixed minimum and maximum sentences, while the mandatory guidelines simply narrowed a judge's discretion within such a range. *Beckles* rejected the argument that identically worded clauses that operate in other contexts are presumptively unconstitutional following *Johnson*. Seven circuits are unconvinced that *Johnson*'s holding extends to the mandatory guidelines. "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion). "Dictated by precedent," meanwhile, means that "*no other* interpretation was reasonable." *Lambrix v. Singletary*, 520 U.S. 518, 538 (1997). Clearly there are multiple reasonable interpretations of *Johnson*'s reach.

In order to prevail, Arrington must persuade the Court not that the question should be resolved in his favor, but rather that it has already been resolved. The issue is not whether a judge could write a sensible opinion holding the mandatory guidelines' residual clause unconstitutionally vague, but whether the Supreme Court did just that in *Johnson*. It did not. There was a straightforward theory available after *Johnson*: If one clause affecting sentencing was unconstitutionally vague, identical clauses must also be unconstitutional. *Beckles* quashed that theory. Arrington focuses on language that emphasizes the guidelines' advisory nature but disregards portions of the opinion that may also apply to mandatory

5

guidelines. He cites *Dimaya v. Sessions*, 138 S. Ct. 1204 (2018), a Supreme Court holding that applies *Johnson* to a similarly worded clause in another criminal statute. Def.'s Suppl. Reply, ECF No. 190. *Dimaya* is offered as proof that *Johnson* is not limited to the ACCA. This assertion is persuasive but unproductive. By its own terms, *Dimaya* is a "straightforward application" of *Johnson*. *Dimaya*, 138 S. Ct. at 1213. Extracting a rule from *Johnson* that applies to another "criminal statute[] with criminal sentencing consequences" is a short leap. *Id.* at 1217. Stretching that rule to cover the mandatory guidelines after *Beckles* is not. *Dimaya* is an extension of *Johnson*, not a broadening of it. This Court need not reach the question of whether the mandatory sentencing guidelines' residual clause is unconstitutionally vague—acknowledging that the question is unsettled is enough to render Arrington's motion untimely.

The Seventh Circuit finds a fatal flaw in the popular reading of § 2255(f)(3). *Cross*, 892 F.3d at 293-4. *Cross*'s reading would have a court opt out of deciding whether a right newly recognized by the Supreme Court is in fact the one being asserted by a defendant. *Id.* It is not up to the court, apparently, to "read[] a merits analysis into the limitations period." *Id.* at 293. It is enough that defendants *assert* the right—whether they may actually claim it is a question for down the line. *Id.* This reading is unsupported by authority. The most obvious concern raised by *Cross* is the ease with which a defendant could bypass § 2255's one-year limitations period. He need only hitch his claim for relief to a recent Supreme Court holding—whether the claim and the holding line up is apparently irrelevant. A court in this District has adopted *Cross*'s reading and comes to its defense, satisfied that such a frivolous "motion may be summarily dismissed if the right has not been, in fact, either newly recognized by the Supreme Court or made retroactively applicable to cases on collateral review." *United States v. Hammond*, 354 F. Supp. 3d 28, 41 (D.D.C. 2018) (internal quotations omitted). This approach would at best accomplish the same result at the expense of nullifying the limitations period. But *Cross* is not consistent with the text of the statute. Section 2255(f)(3) runs from "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3). The "right asserted" must be the same right that was

"recognized" by the Supreme Court. Arrington's right asserted is "the right not to have a sentence fixed by an unconstitutionally vague residual clause." Def.'s Reply Mot. 1, ECF No. 189. For the reasons detailed above, that is not the right recognized by the Court in *Johnson*. *See Green*, 898 F.3d at 322 ("We are not persuaded by the [Seventh Circuit's] brief analysis on this issue, which effectively reads 'recognized' out of 28 U.S.C. § 2255(f)(3) by not engaging in an inquiry into whether the right asserted by the petitioner is the same right that was recognized by the Supreme Court . . . .").

**IV.    CONCLUSION**

Because the motion is untimely, we need not address the government's remaining arguments. *Beckles* confirmed that *Johnson*'s holding is too narrow to control the constitutionality of the mandatory sentencing guidelines' residual clause.

A separate order shall issue.

SIGNED this  24th  day of September, 2019.

_____/s/_____
Royce C. Lamberth
United States District Judge