## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Case No. 00-cr-159-RCL** |
| **DERREK K. ARRINGTON,** | |
| *Defendant*. | |

### <u>MEMORANDUM OPINION</u>

Before the Court is defendant Derrek K. Arrington's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Mr. Arrington served a twenty-year sentence after a jury convicted him of assaulting a federal officer with a dangerous weapon in violation of 18 U.S.C. § 111(a) and (b), and unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). J., ECF No. 75. This Court denied Mr. Arrington's motion as untimely under 28 U.S.C. § 2255(f)(3). *United States v. Arrington*, No. 00-cr-159 (RCL), 2019 WL 4644381, at *3–4 (D.D.C. Sept. 24, 2019), *rev'd*, 4 F.4th 162 (D.C. Cir. 2021). The D.C. Circuit reversed and remanded to this Court for further proceedings. *Arrington*, 4 F.4th at 171. Upon consideration of the record, the applicable law, and the parties' briefing, the Court will **GRANT** Mr. Arrington's § 2255 motion, vacate his sentence, and resentence him at a later date.[1]

### I.    BACKGROUND

#### A.  Factual and Procedural Background

Mr. Arrington's convictions stem from a traffic stop that escalated into a high-speed chase and ended after he shot a police officer in the face. On April 13, 2000, United States Park Police officers pulled over Mr. Arrington and observed suspected drugs inside his vehicle. Gov't Opp'n 3,

---

[1] The Court finds that an oral hearing on Mr. Arrington's § 2255 motion is unnecessary. *See* LCrR 47(f).

ECF No. 183. Officers demanded that Mr. Arrington exit his car, but he refused. *Id.* Mr. Arrington instead shifted his vehicle into gear. *Id.* Two officers attempted to stop him. *Id.* Officer Daniels, who was standing on the driver's side of the vehicle, reached inside and grabbed Mr. Arrington. *Id.* Another officer, who was standing on the passenger's side, tried to remove his keys from the ignition. *Id.* The officers were unable to stop Mr. Arrington, and he sped away, dragging Officer Daniels through an intersection. *Id.* Mr. Arrington led police on a high-speed chase but ultimately abandoned his vehicle and fled on foot. *Id.* Officer Daniels, who had resumed his pursuit of Mr. Arrington, caught up with him as he attempted to scale a fence. *Id.* At that moment, Mr. Arrington produced a handgun, aimed it at Officer Daniels, and shot him once in the face. *Id.* Other officers were able to subdue Mr. Arrington, but the damage to Officer Daniels was already done. *Id.* The gunshot wound severed one of the nerves in his face, causing facial paralysis and requiring nerve surgery to restore movement. *Id.* at 3–4.

Mr. Arrington was indicted for several felony offenses and proceeded to trial before Judge James Robertson. On September 18, 2000, a jury convicted Mr. Arrington of assaulting a federal officer with a dangerous weapon in violation of 18 U.S.C. § 111(a) and (b), and unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). Verdict Form, ECF No. 35. The jury hung on the remaining charges. Because Mr. Arrington had already been convicted of two armed robbery offenses, he faced a heightened "210- to 262-month sentencing range, which became 210 to 240 months because of the 10-year statutory maximum" on each of his counts. *Arrington*, 4 F.4th at 164. The sentencing range was heightened because the Court found that Mr. Arrington's previous armed robbery convictions qualified as "crimes of violence" under the Guidelines, which triggered certain enhancements. *Id.* The heightened range was mandatory because, at the time, the sentencing guidelines were "mandatory and binding on

all judges." *United States v. Booker*, 543 U.S. 220, 233 (2005). The Court sentenced Mr. Arrington to 240 months—the top of the Guidelines range as limited by the statutory maxima. *Arrington*, 4 F.4th at 164.

As the Circuit explained in its opinion reversing and remanding this Court, "[Mr.] Arrington faced a heightened sentencing range because of two Guidelines provisions." *Id.* The first provision, § 2K2.1(a), "required an increased base offense level of 24 for a defendant," Def.'s Suppl. Mot. 1, ECF No. 177, who "had at least two prior felony convictions of either a crime of violence or a controlled substance offense," U.S.S.G. § 2K2.1(a)(2) (Nov. 2000). The second provision, § 4B1.1, classified a defendant as "a career offender" and applied a sentencing enhancement if the following three conditions were met: "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1 (Nov. 2000). At issue during sentencing was whether his prior convictions constituted predicate crimes of violence such that these provisions applied to Mr. Arrington.

The Guidelines' definition of "crime of violence" appeared at § 4B1.2(a) and contained three clauses. The first, known as the "elements clause," defined a crime of violence as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another. U.S.S.G. § 4B1.2(a)(1) (Nov. 2000). The second, known as the "enumerated clause," defined a crime of violence as any felony that "is burglary of a dwelling, arson, or extortion" or "involves use of explosives." U.S.S.G. § 4B1.2(a)(2) (Nov. 2000). The third, known

as the "residual clause," defined a crime of violence as any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.*

Judge Robertson found that Mr. Arrington's unlawful possession of a firearm count qualified for an enhanced base offense level under § 2K2.1(a)(2) and his assault on a federal officer count qualified him as a career offender under § 4B1.1 "because he ha[d] at least two prior felony convictions of either a crime of violence or a controlled substance offense." Sentencing Tr. 7, ECF No. 177-2; *see also Arrington*, 4 F.4th at 164. The sentencing judge did not specify which Guidelines' definition of "crime of violence" he relied upon in determining that Mr. Arrington was a career offender. *See* Sentencing Tr. 7. Based on these "somewhat complicated" Guidelines calculations, Mr. Arrington was sentenced to twenty years in prison, followed by six years of supervised release. Sentencing Tr. 4, 19–20. He was also ordered to pay a $200 special assessment and $700 in restitution. Sentencing Tr. 20–21.

The Circuit affirmed his conviction on direct appeal. *United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002), *cert. denied*, 537 U.S. 1241 (2003). Mr. Arrington then filed his first § 2255 motion, which Judge Robertson denied. *Arrington v. United States*, No. 00-cr-159 (JR), 2007 WL 1238740, at *1 (D.D.C. Apr. 26, 2007).[2] Mr. Arrington appealed, Notice of Appeal, ECF No. 115, and the Court denied a certificate of appealability, Order, ECF No. 119. The Circuit then dismissed Mr. Arrington's appeal for lack of a certificate. *United States v. Arrington*, No. 08-3005 (D.C. Cir. July 23, 2008) (per curiam order).[3]

## B. *Johnson* and Its Progeny

Several important legal developments occurred in the following years.

---

[2] The contents of Mr. Arrington's first § 2255 motion are not relevant here.

[3] The Court will omit the history of Mr. Arrington's other post-conviction filings, none of which are relevant here.

In January 2005, the Supreme Court "severed and excised" 18 U.S.C. § 3553(b)(1)—the provision requiring sentencing courts to "impose a sentence of the kind, and within the range" set forth in the Sentencing Guidelines—thereby rendering the Guidelines "effectively advisory." 18 U.S.C. § 3553(b)(1); *Booker*, 543 U.S. at 245.

Then, on June 26, 2015, the Supreme Court decided *Johnson v. United States* and held the residual clause of the Armed Career Criminal Act of 1984 (ACCA), which contained language identical to the Sentencing Guidelines' residual clause, unconstitutionally vague. 576 U.S. 591, 606 (2015). The *Johnson* Court explained that "[t]wo features of [ACCA's] residual clause conspire[d] to make it unconstitutionally vague. *Id.* at 597. First, the residual clause left "grave uncertainty about how to estimate the risk posed by a crime" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* Second, the residual clause left "uncertainty about how much risk it takes for a crime to qualify [under the clause]." *Id.* at 598. A year later, the Supreme Court held that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 578 U.S. 120, 135 (2016).

Shortly after *Welch*, the D.C. Circuit decided *United States v. Sheffield*, which extended *Johnson* to the Sentencing Guidelines and invalidated § 4B1.2(a)'s residual clause as unconstitutionally vague. *United States v. Sheffield*, 832 F.3d 296, 312–13 (D.C. Cir. 2016). However, the Supreme Court's decision in *Beckles v. United States* the following year rejected an unconstitutional vagueness challenge to the post-*Booker* Sentencing Guidelines' residual clause and effectively overruled *Sheffield*. *Beckles v. United States*, 580 U.S. 256, 259 (2017). The Supreme Court declined to extend *Johnson* to the now-advisory Guidelines because unlike ACCA's residual clause, the advisory Guidelines "do not fix the permissible range of sentences"

and "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* at 263. For this reason, the advisory Guidelines are entirely exempted from "vagueness challenge[s] under the Due Process Clause." *Id.* However, as Justice Sotomayor noted in concurrence, "[t]he Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment *before* our decision in *United States v. Booker* . . . may mount vagueness attacks on their sentences." *Id.* at 281 n.4 (Sotomayor, J., concurring) (emphasis added) (citations omitted).

Although the advisory Guidelines' residual clause survived, other residual clauses remained vulnerable to vagueness challenges. For instance, in *Sessions v. Dimaya*, the Supreme Court invalidated 18 U.S.C. § 16(b)'s residual clause because it had "the same two features as ACCA's, combined in the same constitutionally problematic way." 138 S. Ct. 1204, 1213 (2018). The Court explained that "*Johnson* effectively resolved the case," and that its decision was a "straightforward application" of *Johnson*. *Id.* The Supreme Court similarly invalidated 18 U.S.C. § 924(c)(3)(b)'s residual clause in *United States v. Davis*. 139 S. Ct. 2319, 2336 (2019). In *Davis*, the government conceded that if the categorical approach applied to § 924(c)'s residual clause, then following *Johnson* and *Dimaya*, "imposition of criminal punishment [could not] be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *Id.* at 2326, 2333. In other words, both the parties and the Court understood that the constitutional invalidity of § 924(c)'s residual clause followed from *Johnson*.

As will be explained shortly, Mr. Arrington asks this Court to apply *Johnson* to the mandatory Guidelines' residual clause and invalidate his sentence. The Supreme Court has not yet entertained a vagueness challenge to the pre-*Booker* mandatory Sentencing Guideline's residual clause, and only a handful of circuits have squarely addressed the question. *See Shea v. United*

*States*, 976 F.3d 63, 80 (1st Cir. 2020) (invalidating mandatory Guidelines' residual clause as unconstitutionally vague); *Cross v. United States*, 892 F.3d 288, 306–07 (7th Cir. 2018) (same); *In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016) (rejecting vagueness challenge to mandatory Guidelines' residual clause). However, three judges of this Court have considered substantively identical § 2255 motions challenging sentences under the mandatory Guidelines' residual clause; all three have decided in favor of the petitioners based on *Johnson*. *See United States v. Sumner*, 597 F. Supp. 3d 120, 139–40 (D.D.C. 2022) (Collar-Kotelly, J.); *United States v. Carter*, 422 F. Supp. 3d 299, 316–17 (D.D.C. 2019) (Huvelle, J.); *United States v. Hammond*, 351 F. Supp. 3d 106, 124–29 (D.D.C. 2018) (Howell, J.).

### C.  Mr. Arrington's § 2255 Motion

Mr. Arrington's second § 2255 motion has a circuitous history with this Court. On April 27, 2016, Mr. Arrington filed a *pro se* petition with the D.C. Circuit for leave to file a successive § 2255 motion and claim the benefit of the right recognized by the Supreme Court in *Johnson*. *In re Derrek Arrington*, No. 16-3020 (Apr. 27, 2016) (petition). Then, on May 31, 2016, Mr. Arrington, now represented by counsel, filed an emergency motion to supplement his petition. Def.'s Emergency Mot., ECF No. 174. The Circuit granted his petition and transmitted his emergency motion to the Court, noting that his "petition for leave to file . . . was filed within one year of the Supreme Court's June 26, 2015 *Johnson* decision . . . [and] shall be deemed timely filed in district court." *In re Derrek Arrington*, No. 16-3020 (D.C. Cir. June 15, 2016) (per curiam order). Mr. Arrington supplemented his successive § 2255 motion in May 2017. Def.'s Suppl. Mot. Mr. Arrington's successive motion argues that the mandatory Guidelines' residual clause is void under *Johnson*, the *Johnson* rule as applied to the mandatory Guidelines is retroactive on collateral review, and Mr. Arrington no longer qualifies for an increased base offense level under § 2K2.1(a)

or as a career offender under § 4B1.1. *Id.* Mr. Arrington asks the Court to vacate his current sentence and resentence him. *Id.* The government opposes Mr. Arrington's motion. Gov't Opp'n.

In September 2019, this Court dismissed Mr. Arrington's second § 2255 motion as untimely under § 2255(f)(3). *Arrington*, 2019 WL 4644381, at *3–4. Section 2255(f) imposes "[a] 1-year period of limitation" on § 2255 motions. 28 U.S.C. § 2255(f). The limitation period runs, as relevant here, from "the date on which the *right asserted* was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3) (emphasis added). In evaluating the timeliness of Mr. Arrington's second § 2255 motion, the Court elected to narrowly construe the right "newly recognized" by the Supreme Court in *Johnson*. *See Arrington*, 2019 WL 4644381, at *3–4. Because Mr. Arrington's motion asserted the more generalized "right not to have a sentence fixed by an unconstitutionally vague residual clause," and not the narrower right identified by the Court, the Court held that Mr. Arrington had not asserted the same right "recognized" by the Supreme Court in *Johnson*. *See id.* at *4. This rendered Mr. Arrington's second motion untimely under § 2255(f)(3). The Court did not reach the other procedural bars or merits issues identified by the government.

In July 2021, the Circuit reversed and remanded, holding that *Johnson* "recognized a person's right not to have his sentence dictated by the unconstitutionally vague language contained in the mandatory residual clause" and that "[Mr.] Arrington asserts that right" in his petition. *Arrington*, 4 F.4th at 170. The Circuit explained that "right" for § 2255(f)(3) purposes should be interpreted "at a relatively high level of generality." *See id.* at 167. The Circuit further explained that construing the right recognized in *Johnson* narrowly would "collapse[] the timeliness and merits inquiries into one." *Id.* at 168. Although Mr. Arrington plainly argued "that he does

have . . . a particularized right" not to be sentenced under the mandatory Guidelines' residual clause—a particularized right not itself recognized in *Johnson*—"[Mr.] Arrington plainly asserts the more general right, recognized in *Johnson*, not to have his sentence dictated by the unconstitutionally vague language contained in the mandatory residual clause." *Id.* The Circuit concluded that Mr. Arrington's petition satisfies § 2255(f)(3) and remanded "for further proceedings consistent with [its] opinion." *Id.* at 170–71.

After remand, Mr. Arrington submitted supplemental briefing directed toward the merits. Def.'s Post-Remand Suppl., ECF No. 201. The government responded by reasserting the procedural and merits arguments (except for timeliness) stated in its opposition. Gov't Post-Remand Resp., ECF No. 206. Mr. Arrington then submitted his final reply. Def.'s Post-Remand Reply, ECF No. 208.

## II. LEGAL STANDARD

Section 2255 permits a prisoner serving a federal sentence to move to "vacate, set aside or correct the sentence." 28 U.S.C. § 2255. The sentencing court is authorized to discharge or resentence a prisoner if (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *Id.* § 2255(a). The petitioner must "clear a significantly higher hurdle" when seeking collateral relief than he would on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982). Relief under § 2255 is an extraordinary remedy and is generally only granted if "the challenged sentence resulted from 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (quoting *Hill v. United States*, 368 U.S.

424, 428 (1962)). The burden of proof is on the petitioner to demonstrate his right to relief by a preponderance of the evidence. *United States v. Basu*, 881 F. Supp. 2d 1, 4 (D.D.C. 2012).

Usually, claims not raised on direct appeal may not be raised on collateral review. *Massaro v. United States*, 538 U.S. 500, 504 (2003). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Id.* If a defendant failed to pursue a direct appeal or raise a particular claim on direct review, the claim may be raised on collateral review only if the defendant can show that there is sufficient "cause" excusing the double procedural default as well as actual prejudice resulting from the errors of which he complains. *Frady*, 456 U.S. at 167–68. To establish prejudice, a defendant "must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'" *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (emphasis and alteration in original) (quoting *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)).

## III.    DISCUSSION

The government has set forth six grounds in opposition to Mr. Arrington's successive motion to vacate his sentence pursuant to 28 U.S.C. § 2255: (1) Mr. Arrington's motion is untimely under § 2255(f)(3); (2) Mr. Arrington's motion fails to meet the requirements for filing successive motions under § 2255(h)(2); (3) Mr. Arrington procedurally defaulted his vagueness challenge; (4) *Johnson* is not retroactively applicable to the mandatory Guidelines; (5) the mandatory Guidelines are not subject to vagueness challenges under *Beckles*; and (6) Mr. Arrington's convictions qualify him as a career offender. Gov't Opp'n. As previously noted, the D.C. Circuit has already resolved the first ground—timeliness under § 2255(f)(3)—in Mr. Arrington's favor. *See Arrington*, 4 F.4th at 170. The government has effectively conceded the sixth ground by

admitting that Mr. Arrington's predicate conviction for D.C. armed robbery does not qualify as a crime of violence. Gov't Opp'n 37–38. The Court will now address the government's remaining arguments.

### A. Procedural Bars

The government raises two procedural bars to reviewing Mr. Arrington's motion on the merits: the requirements for filing successive motions under § 2255(h)(2) and procedural default. Gov't Opp'n 18–22. These arguments are unavailing.

### 1. Successive Motions: § 2255(h)(2)

As noted *supra*, this is Mr. Arrington's second § 2255 motion. A district court will not review a second or successive § 2255 motion unless it has been "certified as provided in section 2244 by a panel of the appropriate court of appeals to contain . . . a *new rule* of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2) (emphasis added). A court of appeals will certify a successive motion only if the petitioner makes a "prima facie showing" that it satisfies § 2255(h)(2)'s requirements. 28 U.S.C. § 2244(b)(3)(C); *see In re Williams*, 759 F.3d 66, 69–70 (D.C. Cir. 2014). The Circuit certified Mr. Arrington's successive motion on June 15, 2016. *In re Arrington*, No. 16-3020 (Apr. 27, 2016) (petition).

Although the Circuit certified Mr. Arrington's motion, that is not the end of the matter. Some courts of appeals, even after certifying, require district courts to independently evaluate "whether a defendant's successive motion meets the § 2255(h)(2) standard." Gov't Opp'n 19 n.10; *see, e.g.*, *United States v. Peppers*, 899 F.3d 211, 220 (3d Cir. 2018) (requiring district court to conduct its own § 2255(h)(2) inquiry). This requirement stems from the language of § 2244(b)(4), which is incorporated into § 2255(h) and requires the district court to "dismiss any claim presented

in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." 28 U.S.C. §§ 2244(b)(4), 2255(h); *see Hammond*, 351 F. Supp. 3d at 121 (grounding requirement in § 2255(h)'s incorporation of § 2244). The D.C. Circuit has not spoken to this purported requirement, though other judges of this Court considering similar motions have elected to conduct § 2255(h)(2) inquiries. *See Sumner*, 597 F. Supp. 3d at 129; *Carter*, 422 F. Supp. 3d at 312; *Hammond*, 351 F. Supp. 3d at 121–22. This Court sees no reason to buck the trend. The Court will conduct its own inquiry, and if it is not persuaded that Mr. Arrington's successive motion meets the requirements of § 2255(h)(2), it will deny Mr. Arrington's motion.

The government asserts that Mr. Arrington's motion fails § 2255(h)(2) because he cannot show that the Supreme Court recognized the particular rule that he asserts with respect to the mandatory sentencing Guidelines and because "*Welch* . . . made *Johnson* retroactive with respect to [ACCA] alone." Gov't Opp'n 20. However, the Court is persuaded that denial at this stage would be improper. Mr. Arrington's motion satisfies § 2255(h)(2) because it contains "a new rule of constitutional law [*Johnson*] made retroactive by the Supreme Court [*Welch*] to cases on collateral review." *Sumner*, 597 F. Supp. 3d at 129 (additions in original); *see also Carter*, 422 F. Supp. 3d at 313 (same); *Hammond*, 351 F. Supp. 3d at 123 (same). The Court's conclusion reflects an expansive reading of § 2255(h)(2) grounded in *In re Williams* and *Arrington*.

In *In re Williams*, the government asked the Circuit to determine whether the defendant's successive § 2255 motion relied on a retroactive Supreme Court ruling or "an extension" thereof; the government contended that only the former could satisfy § 2255(h)(2). *In re Williams*, 759 F.3d at 70. The Circuit declined to answer that question, reasoning that it was unnecessary to the § 2255(h)(2) inquiry and would have required the court to reach the merits of the defendant's

claim—i.e., to determine whether the Supreme Court ruling at issue actually entitled him to relief. *Id.*; *see also Arrington*, 4 F.4th at 168 (discussing *In re Williams*). Instead, the Circuit took a different tack, holding that § 2255(h)(2) was satisfied because the defendant's motion contained a "new rule . . . that was not previously available' . . . [and] is retroactive to cases on collateral review." *See In re Williams*, 759 F.3d at 70 (quoting *In re Sparks*, 657 F.3d 258, 260 (5th Cir. 2011)). In effect, the Circuit asked not whether the new rule applied to the circumstances of the defendant's conviction, but whether his motion *contained* or *relied* on the rule in the ordinary sense of those terms. Although the Circuit conducted this analysis in the context of certification, which requires only a prima facie showing, *In re Williams* "made clear that the gatekeeping function performed by subsection (h)(2) should not cross over into evaluating whether a new rule applies in a particular case." *Carter*, 422 F. Supp. 3d at 313 (citing *In re Williams*, 759 F.3d at 70–71); *see also Sumner*, 597 F. Supp. 3d at 129 (discussing *Carter*). Thus, the difference between the test the Circuit applied and the test this Court must apply "is only a matter of degree, not substance." *Carter*, 422 F. Supp. 3d at 313.

Mr. Arrington's motion appears to satisfy the *In re Williams* test. Mr. Arrington's motion contains and relies on the *Johnson* rule made retroactive by the Supreme Court in *Welch*. *See* Def.'s Suppl. Mot. (repeatedly citing the principles articulated in *Johnson*); *see also Arrington*, 4 F.4th at 168 ("Arrington plainly asserts the more general right, recognized in *Johnson*, not to have his sentence dictated by the unconstitutionally vague language contained in the mandatory residual clause."); *Carter*, 422 F. Supp. 3d at 312 ("[I]f one gives the word 'contain' its usual and ordinary meaning, it is hard to accept the government's argument that defendant's motion does not 'contain' the rule recognized in *Johnson*."). Of course, if "rule" as used in § 2255(h)(2) were construed narrowly to mean only a Supreme Court decision's technical holding rather than its broad

underlying principles, perhaps the Court would reach a different result. After all, *Johnson* did not *per se* recognize the particularized rule concerning the mandatory sentencing Guidelines that Mr. Arrington asserts in his motion. But this narrow reading of "rule" is irreconcilable with *Arrington*.

As detailed *supra*, the *Arrington* court interpreted "'right' at a relatively high level of generality" for § 2255(f)(3) purposes to avoid collapsing the timeliness and merits inquiries. *See Arrington*, 4 F.4th at 167–68. The Circuit explained that this approach avoids conflating the question of "whether [Mr.] Arrington asserts the right recognized in *Johnson* with whether that right actually controls the outcome in his case." *See id.* at 168. This same conflation concern underpinned the Circuit's reasoning in *In re Williams*. *See* 759 F.3d at 70. The *Arrington* court explicitly connected these two provisions, noting that not only had it "never treated section 2255(f)(3) as requiring the kind of merits-based analysis the government urges; in fact, [it has] expressly declined to conduct such an inquiry in [the] closely related context" of § 2255(h)(2). *Arrington*, 4 F.4th at 168 (citing *In re Williams*, 759 F.3d at 68–70). Because these provisions are "closely related" and share the same merits-conflation concern, it follows that their operative terms—"rule" in § 2255(h)(2) and "right" in § 2255(f)(3)—should be interpreted at the same level of generality. *See id.* Only the highly generalized approach endorsed in *Arrington* ensures consistency between these two provisions and respects the Circuit's exhortation not to "make a final determination of whether the holding in [*Johnson*] will prevail for [Mr. Arrington]" before reaching the merits. *See In re Williams*, 759 F.3d at 70. Thus, although Mr. Arrington's motion may not ultimately succeed unless he is right about *Johnson*'s applicability to the mandatory Guidelines, his motion satisfies § 2255(h)(2) because it relies on "the more general [rule], [newly] recognized in *Johnson*, not to have his sentence dictated by the unconstitutionally vague language contained in the mandatory residual clause." *See Arrington*, 4 F.4th at 168.

The Court does not mean to suggest that the § 2255(f)(3) and § 2255(h)(2) inquiries are the same. The government correctly notes that "§ 2255(h)(2) differs from § 2255(f)(3) in [the] key respect [that] unlike (f)(3), subsection (h)(2) requires that the Supreme Court *itself* hold that the 'new rule of constitutional law' is retroactive." Gov't Opp'n 20. But that distinction makes no difference here. *Johnson* recognized a new rule of constitutional law. The Supreme Court made *Johnson* retroactive to cases on collateral review in *Welch*. Mr. Arrington's motion contains the new rule recognized in *Johnson*. If the Supreme Court had never decided *Welch* and Mr. Arrington had instead relied on a lower court decision recognizing retroactivity, his motion would likely fail under § 2255(h)(2) despite surviving § 2255(f)(3). That is not the case. The clear import of *In re Williams* and *Arrington* is that Mr. Arrington's motion survives § 2255(h)(2). The Court shall proceed to the government's remaining procedural argument, and if Mr. Arrington prevails on that argument, to the merits.

## 2. Procedural Default

The government asserts that Mr. Arrington procedurally defaulted his vagueness challenge to the mandatory Guidelines' residual clause because he did not raise it at sentencing or on direct appeal. "The procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice." *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008). The government contends that Mr. Arrington "has not addressed, much less established, cause and prejudice to excuse his procedural default." Gov't Opp'n 22.

Cause for default exists "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel" on direct appeal. *Reed v. Ross*, 468 U.S. 1, 16 (1984). "A claim is novel under at least three circumstances: (1) the Supreme Court explicitly overrules its own

precedent; (2) the Supreme Court changes course on a longstanding and widespread practice to which the Supreme Court had not spoken, but which a near-unanimous body of lower court authority had expressly approved; and (3) the Supreme Court disapproves of a once-sanctioned practice." *United States v. Johnson*, No. 98-cr-71-1, -6 (BAH), 2023 WL 4234651, at *8 (D.D.C. June 28, 2023) (internal quotation marks and alteration brackets omitted) (quoting *United States v. Hammond*, 354 F. Supp. 3d 28, 42 (D.D.C. 2018) (quoting *Reed*, 468 U.S. at 17)). To show prejudice, a defendant "must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'" *Pettigrew*, 346 F.3d at 1144 (emphasis and alteration in original) (quoting *Dale*, 140 F.3d at 1056 n.3). At the prejudice stage the Court assumes the existence of error. *Id.* at 1145.

There is cause and prejudice here. "[C]ourts in this Circuit have repeatedly recognized the novelty of claims based on *Johnson*[,] therefore establishing cause." *Johnson*, 2023 WL 4234651, at *9. Indeed, "[t]he constitutional right vindicated by the *Johnson* line of cases, culminating in *Davis*, was unforeseeable." *United States v. Smith*, 605 F. Supp. 3d 1, 13–14 (D.D.C. 2022). "[I]t is fair to say that no one—the government, the judge, or the [defendant]—could reasonably have anticipated *Johnson*." *United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016). Simply put, "[u]ntil the Supreme Court announced its new rule in *Johnson*, [Mr. Arrington] did not have a 'reasonable basis' upon which to challenge the constitutionality of [the Guidelines'] residual clause." *United States v. Booker*, 240 F. Supp. 3d 164, 170 (D.D.C. 2017); *see also United States v. Brown*, 249 F. Supp. 3d 287, 292–93 (D.D.C. 2017) (same). After all, *Johnson* overruled two relatively recent Supreme Court decisions—*James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 564 U.S. 1 (2011). *Johnson*, 576 U.S. at 606. That puts it squarely within

the camp of constitutional claims that are so novel that their legal bases were not reasonably available to counsel. *See Reed*, 468 U.S. at 16–17.

Prejudice is also clear. Defendants suffer prejudice when under new case law, they "would have been sentenced to prison for . . . less than the imposed sentence." *See United States v. McKie*, 73 F.3d 1149, 1154 (D.C. Cir. 1996). Mr. Arrington asserts that "[w]ith no increased base offense level for prior crimes of violence and no career offender designation, Mr. Arrington would have faced a [mandatory] Guidelines range of 151 to 188 months of imprisonment. Had one of his prior convictions qualified . . . [his] Guidelines range would have been 168 to 210 months." Def.'s Suppl. Mot. 7–8 (footnotes omitted). The government asserts, however, that Mr. Arrington cannot establish prejudice because the "rule that defendant proposes would not apply retroactively." Gov't Opp'n 22. In other words, the government wants this Court to find that Mr. Arrington has not shown prejudice because he is not ultimately entitled to relief. "That position . . . puts the proverbial cart before the horse, by leaping to assess the merits of [Mr. Arrington's] claims before determining whether [he] would be prejudiced by [the] claimed error." *Johnson*, 2023 WL 4234651, at *9. The Court's job here is to assume error and determine whether but for the assumed error the result of the proceeding would have been different. *See Pettigrew*, 346 F.3d at 1145. Mr. Arrington plausibly alleges that but for the sentencing court's reliance on the mandatory Guidelines' residual clause, at least one of his prior convictions would not have qualified as a crime of violence and he would have received a lesser sentence. That constitutes prejudice sufficient to avoid procedural default.

The veritable cavalcade of decisions in this Court rejecting efforts to foreclose § 2255 motions based on *Johnson* through procedural default bears noting. *See, e.g.*, *United States v. Ortega-Hernandez*, No. 12-cr-14 (APM), 2023 WL 4419770, at *3 (D.D.C. July 10, 2023);

*Johnson*, 2023 WL 4234651, at \*8–9; *Smith*, 605 F. Supp. 3d at 14; *Sumner*, 597 F. Supp. 3d at 135; *United States v. Perkins*, No. 04-cr-355-06 (CKK), 2023 WL 1795585, at \*6 (D.D.C. Feb. 7, 2023); *Sorto v. United States*, No. 08-cr-167-4 (RJL), 2022 WL 558193, at \*2 (D.D.C. Feb. 24, 2022); *Hammond*, 354 F. Supp. 3d at 43; *Hammond*, 351 F. Supp. 3d at 124; *Carter*, 422 F. Supp. 3d at 310; *United States v. West*, 314 F. Supp. 3d 223, 229 n.4 (D.D.C. 2018); *United States v. Taylor*, 272 F. Supp. 3d 127, 135–36 (D.D.C. 2017); *United States v. Wilson*, 249 F. Supp. 3d 305, 315 (D.D.C. 2017); *Brown*, 249 F. Supp. 3d at 292–93; *Booker*, 240 F. Supp. 3d at 170–71.[4] The Court sees no reason to deviate from this well-reasoned consensus and will turn to the merits.

## B. Merits

To prevail on the merits, Mr. Arrington must show that *Johnson* invalidated his sentence. Mr. Arrington must specifically establish that (1) the mandatory Guidelines are susceptible to *Johnson*-style vagueness challenges, (2) the mandatory Guidelines' residual clause is unconstitutionally vague, and (3) at least one of Mr. Arrington's prior convictions does not qualify as a crime of violence under the Guidelines' remaining definitions (the "elements clause" or the "enumerated clause"). As discussed *infra*, the Court finds that Mr. Arrington has made each of the requisite showings. However, before considering these merits questions in earnest, the Court must address the government's argument that *Johnson* as applied to the mandatory Guidelines constitutes a procedural rule and is not retroactive under *Teague v. Lane*, 489 U.S. 288 (1989). Gov't Opp'n 22–28. As the Court will explain, retroactivity here turns on the same question that determines whether the mandatory guidelines are susceptible to vagueness challenges—i.e., did

---

[4] The Court agrees with Judge Howell that Mr. Arrington need not show that the sentencing judge "actually relied" on the residual clause. *Hammond*, 351 F. Supp. 3d at 129 n.13.

the mandatory guidelines "fix" sentences. Because that is effectively a merits question, the substantive analysis that follows is sufficient to overcome the government's retroactivity concerns.

## 1. Retroactivity

The general rule is that criminal defendants may not claim the benefit of Supreme Court decisions announced after final judgment. *Teague*, 489 U.S. at 310. However, there is an exception to the general rule, and as repeatedly noted herein, the Supreme Court expressly made *Johnson* retroactive in *Welch*. *Welch*, 578 U.S. at 135. Still, the government believes that Mr. Arrington cannot claim the benefit of *Johnson* because "*Johnson* as applied to the Guidelines would constitute a procedural rule and thus would not apply retroactively." Gov't Opp'n 22.

The government's proposed categorization is significant because only substantive rules are excepted from *Teague*'s general retroactivity bar. "[N]ew substantive rules generally apply retroactively." *Welch*, 578 U.S. at 128 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)). *Johnson* has retroactive effect because it announced a "substantive rule." *Id.* at 135. New procedural rules do not have retroactive effect. *See Edwards v. Vannoy*, 141 S. Ct. 1547, 1559–60 (2021) (obviating previous exception to *Teague* for watershed rules of criminal procedure and holding that "[n]ew procedural rules do not apply retroactively on federal collateral review"). If the government is correct that *Johnson* as applied to the mandatory Guidelines is merely procedural (because of its purported inertness when applied to the Guidelines), then Mr. Arrington cannot claim the benefit of that decision under *Teague*.

The Supreme Court explained in *Welch* that "whether a new rule is substantive or procedural" is determined "by considering the function of the rule" and "depends . . . on whether the new rule itself has a procedural function or a substantive function—that is, whether it alters

only the procedures used to obtain the conviction, or alters instead the range of conduct or class of persons that the law punishes." *Id.* at 130–31. Specifically, the Court explained that:

> The residual clause is invalid under *Johnson*, so it can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that "even the use of impeccable factfinding procedures could not legitimate" a sentence based on that clause.

*Id.* at 130 (quoting *United States v. United States Coin & Currency*, 401 U.S. 715, 724 (1971)). This passage is crucial. It illustrates that invalidating ACCA's residual clause served a substantive function because the result was that it could no longer "mandate or authorize" sentences. If the result of invalidating the mandatory Guideline's residual clause is that it too no longer "mandate[s] or authorize[s]" sentences, then that invalidation must have retroactive effect as well.

The key question the Court must resolve is whether the mandatory Guidelines' residual clause was ever capable of mandating or authorizing sentences. The government says no. Their position is that the Guidelines at most guided judicial discretion. *See* Gov't Opp'n 27 n.12. So long as a sentence fell within the applicable statutory range, the sentence was lawful, even though it was the product of an erroneous Guidelines determination—e.g., one predicated on an unconstitutionally vague residual clause. *See id.* at 26–27. Mr. Arrington has a decidedly different view. He argues that the mandatory Guidelines operated with the force of law and set constitutionally significant sentencing minima and maxima. *See* Def.'s Suppl. Mot. 16–17, 21. On his view, the sentencing Guidelines *required* judges to impose sentences within specified ranges. *Id.* at 16. If sentencing judges deviated from the range calculated under the Guidelines, they would have been reversed. *See id.* at 17.

As the Court will shortly make clear, the answer to the parties' dispute on this point also determines whether the mandatory Guidelines are susceptible to vagueness challenges at all. So,

rather than indulge the government's request for endless preamble, the Court will finally address the merits head-on.

## 2. *Johnson* Applies to the Mandatory Career Offender Guideline

*Johnson* voided ACCA's residual clause as unconstitutionally vague in violation of the Fifth Amendment's Due Process Clause. 576 U.S. at 595–97. *Beckles* considered whether the advisory Guidelines' residual clause was also void for unconstitutional vagueness. 580 U.S. at 267. The *Beckles* Court held that the advisory Guidelines are not subject to due process vagueness challenges because they "do not fix the permissible range of sentences . . . and merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* at 263. More specifically, the advisory Guidelines, unlike ACCA's residual clause, do not "implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement." *Id.* at 265. However, *Beckles* left open "the question whether defendants sentenced to terms of imprisonment before" the Court's decision in *Booker*, "that is, during the period in which the Guidelines *did* fix the permissible range of sentences[,]" may lodge vagueness challenges. *Id.* at 281 n.4 (Sotomayor, J., concurring) (internal quotation marks omitted).

This sets up a two-part inquiry for this Court: (1) did the mandatory Guidelines fix sentences such that they are susceptible to vagueness challenges, and if so, (2) is the mandatory Guidelines' residual clause unconstitutionally vague. As noted *supra* Part III.B.1., the answer to the first question is also determinative of its retroactive applicability to cases on collateral review.

### i. Did the mandatory Guidelines fix sentences?

*Beckles* provides the analytical framework for evaluating the mandatory Guidelines' susceptibility to vagueness challenges under the Fifth Amendment's Due Process Clause. "[T]he Due Process Clause prohibits the Government from 'taking away someone's life, liberty, or

property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.* at 262 (quoting *Johnson*, 576 U.S. at 595). There are two kinds of criminal laws that have been invalidated for unconstitutional vagueness: laws defining offenses and laws fixing permissible sentences. *Id.* At issue here is whether the mandatory Guidelines' residual clause fixed permissible sentences. If the mandatory Guidelines' residual clause fixed sentences, then the "void-for-vagueness" doctrine requires that it "specify the range of available sentences with sufficient clarity." *Id.* (internal quotation marks and citations omitted). Mr. Arrington contends that the mandatory Guidelines' residual clause fails this requirement for the same reasons the *Johnson* Court invalidated ACCA's. Def.'s Supp. Mot. 14–15; *see infra* Part III.2.ii.

*Beckles* "drew from the *Booker* line of cases to distinguish laws that 'fix' sentences . . . from laws that 'merely guide' judicial discretion." *Shea*, 976 F.3d at 76. The term "fixed," as used by the Court in *Beckles*, originated in *Alleyne v. United States*, which held that facts which increase the prescribed range of penalties to which a criminal defendant is exposed by conviction are elements of crimes that must be submitted to a jury and proven beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 103 (2013); *see also Shea*, 976 F.3d at 76. Under *Alleyne*, the "legally prescribed range [of sentences] *is* the penalty affixed to the crime." *Id.* at 112. In other words, a law fixes a criminal penalty if it prescribes the range of punishment applicable to a criminal offense. This includes laws that prescribe sentencing minima, maxima, or both. *Id.* *Alleyne* is clear: "a fact that raises either (maximum *or* minimum) end of the 'the legally prescribed range of sentences to which a criminal defendant is exposed' necessarily changes 'the penalty *affixed* to the [defendant's] crime.'" *Shea*, 976 F.3d at 76 (first quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); then quoting *Alleyne*, 570 U.S. at 112). The question is whether the

mandatory Guidelines "prescribed [the] range of sentences to which . . . defendant[s are] exposed" as contemplated by *Alleyne*. *Alleyne*, 570 U.S. at 108.

Before *Booker*, the Sentencing Reform Act (SRA) *required* judges to "impose a sentence of the kind, and within the range established by the Guidelines, subject to departures in specific limited cases" in which the SRA permitted departures. *Booker*, 543 U.S. at 234 (internal quotation marks omitted) (quoting 18 U.S.C. § 3553(b)). If no departure was available, then the Guidelines set the sentencing floor and ceiling for an offense. *See id.* at 234–35. Departures from the Guidelines ranges were extremely rare. In fact, "in most cases, as a matter of law . . . no departure [was] legally permissible . . . [and] the judge [was] bound to impose a sentence within the Guidelines range." *Id.* at 234.; *see also id.* at 233 (explaining that the mandatory Guidelines "could [not] be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts").

It was the Guidelines' mandatory nature that ran them headlong into *Apprendi*, and ultimately required severance and excision of § 3553(b)(1). *See id.* at 230–35. Under *Apprendi*, any fact "[o]ther than the fact of a prior conviction . . . that increases the penalty for a crime beyond the prescribed statutory maximum" must be submitted to a jury and found beyond a reasonable doubt. 530 U.S. at 490. The *Booker* Court found that "Guideline enhancements routinely violated" the *Apprendi* rule because "they raised the 'legally permissible' range of sentences based on facts found by the judge, rather than a jury." *Shea*, 976 F.3d at 75–76 (citing *Booker*, 543 U.S. at 230–35, 238). It made no difference that "the mandatory Guidelines could never exceed a statutory maximum." *Hammond*, 351 F. Supp. 3d at 128. The mandatory Guidelines raised sentencing floors, and, under the Court's later decision in *Alleyne*, that meant they "alter[ed] the prescribed range of sentences to which a criminal defendant is exposed." *Alleyne*, 570 U.S. at 112. In other

words, the mandatory Guidelines were inconsistent with *Apprendi* (and later, *Alleyne*) because they fixed sentences.

The government contends that the mandatory guidelines did not alter or set any minimum or maximum sentences "in the same way that a federal statute does." Gov't Opp'n 30. Relying on the Eleventh Circuit's decision in *In re Griffin*, the government appears to believe that the mandatory Guidelines merely "assist[ed] and limit[ed] the discretion of the sentencing judge." *In re Griffin*, 823 F.3d at 1354 (citing *United States v. Matchett*, 802 F.3d 1185, 1195 (11th Cir. 2015)). But this position is irreconcilable with *Booker*. "[T]he Guidelines [had] the force and effect of laws." *Booker*, 543 U.S. at 234. When the Guidelines were mandatory, they defined the legally permissible range of penalties that judges could impose for people convicted of crimes. Conformity to the Guidelines was required by statute. *Id.* at 233–35; *see* 18 U.S.C. § 3553(b)(1). True, judges enjoyed discretion within the applicable Guidelines range. But they could not deviate from that range to impose a sentence that complied with otherwise applicable statutory maxima and minima. *See Booker*, 543 U.S. at 235 (explaining that the sentencing judge would "have been reversed had he not imposed a sentence within the" applicable Guidelines range). As already noted, the reason why the mandatory Guidelines ran afoul of *Apprendi* is because judicial findings of fact shifted the applicable Guidelines range and altered the penalties that sentencing judges were required to impose. *Id.* at 230–35; *see also Shea*, 976 F.3d at 75. The mandatory Guidelines could not have altered sentences for *Apprendi* purposes without also implicating due process.[5]

---

[5] The government argues that sentences imposed under the mandatory Guidelines always fell within the statutory limits set by Congress and therefore are not illegal even when they are the product of an erroneous Guidelines range. Gov't Opp'n 26–27. But one lesson of *Alleyne* is that sentences that fall within statutory bounds may still be unlawful if they are the product of an unlawfully-derived range. *See Alleyne*, 570 U.S. at 115–16 ("[I]f a judge were to find a fact that increased the statutory maximum sentence, such a finding would violate the Sixth Amendment, even if the defendant ultimately received a sentence falling within the original sentencing range[—]i.e., the range applicable without that aggravating fact. . . . The essential point is that the aggravating fact produced a higher range . . . .").

Apropos of this last point, the government argues that the mandatory Guidelines did not implicate the twin due process concerns of "providing notice and preventing arbitrary enforcement." Gov't Opp'n 30–32. But that view is inconsistent with the *Beckles* Court's explanation for why the advisory Guidelines are not susceptible to vagueness challenges.

*Beckles* stated that the advisory Guidelines do not implicate the Due Process Clause's concern with notice "because even if a person behaves so as to avoid an enhanced sentence under the career-offender guideline, the sentencing court retains discretion to impose the enhanced sentence." 580 U.S. at 265 (citing *Pepper v. United States*, 562 U.S. 476, 501 (2011)). In an advisory Guideline system, notice is *never* sufficient to apprise a person how to regulate their conduct to avoid an enhanced sentence; the judge *always* retains discretion to sentence within the statutory range. But the mandatory Guidelines are different. Because the mandatory Guidelines necessarily required enhanced sentences if the criteria for enhancements were met (e.g., the offender has two prior convictions for crimes or violence), and barred enhanced sentences if they were not, a person, properly apprised of the basis for any applicable enhancements, *could* conceivably conform their conduct so as to avoid an enhanced sentence. The Court explicitly contrasted the Mandatory and advisory Guidelines on this point, noting that "'[t]he due process concerns . . . that *require* notice in a world of mandatory Guidelines no longer' apply." *Beckles*, 580 U.S. at 265–66 (emphasis added) (quoting *Irizarry v. United States*, 553 U.S. 708, 714 (2008)). This observation makes no sense unless the mandatory Guidelines implicate the twin due process concerns discussed in *Beckles*.

Regarding "arbitrary enforcement," the government believes that this concern is not implicated because the mandatory Guidelines, like the advisory Guidelines, "typically allow a sentencing judge to impose a sentence that exceeds the top of the Guidelines range under

appropriate circumstances." Gov't Opp'n 31 (quoting *United States v. Rodriquez*, 553 U.S. 377, 390 (2008)). But this ignores the reality that under the mandatory Guidelines, departures were legally impermissible in most cases. *Booker*, 543 U.S. at 234. The government does not contend that Mr. Arrington's sentencing judge could have departed upwards in his case if the career offender guideline did not apply. *See* Gov't Opp'n. But that is beside the point, because if Mr. Arrington is correct that the Guidelines' residual clause is vague, then under the mandatory Guidelines the sentencing judge was *required* to "prescribe the sentences or sentencing range [applicable to him]" based on the career offender guideline, despite it lacking "any legally fixed standards." *Beckles*, 580 U.S. at 266; *see also Shea*, 976 F.3d at 79. The mandatory Guidelines *obligated* sentencing judges to impose sentencing enhancements if they applied and no departure was available. *See Booker*, 543 U.S. at 233–35 (explaining the mandatory nature of the Guidelines in the context of sentencing enhancements). If the residual clause was vague, then the sentencing judge had "no clear standards for deciding *when* the law bound [him] to enhance the permissible [sentencing] range—leaving that to 'guesswork' and 'invit[ing] arbitrary enforcement.'" *Shea*, 976 F.3d at 80 (citing and quoting *Johnson*, 576 U.S. at 597–602). The mandatory imposition of enhanced sentences on the basis of standardless provisions clearly implicates due process.

In short, the Court is amply satisfied that the mandatory Guidelines fixed sentences and are susceptible to vagueness challenges.[6] *See Sumner*, 597 F. Supp. 3d at 139 (same); *Carter*, 422 F. Supp. 3d at 317 (same); *Hammond*, 351 F. Supp. 3d at 128–29 (same); *see also Shea*, 976 F.3d at 77 (same); *Cross*, 892 F.3d at 306 (same); *but see In re Griffin*, 823 F.3d at 1354

---

[6] The Court's previous memorandum opinion addressing Mr. Arrington's § 2255 motion contained language suggesting that the "mandatory guidelines simply narrowed a judge's discretion" and did not fix minimum and maximum sentences. *See Arrington*, 2019 WL 4644381, at *3. Nothing in the Court's previous opinion, which was reversed, should be construed as expressing a view on the merits. The Court decided only that Mr. Arrington's motion was untimely under § 2255(f)(3) because *Johnson* did not itself hold the mandatory Guidelines' residual clause invalid. The Court is not bound by its own dictum to the extent it suggests anything contrary to today's holding.

(rejecting vagueness challenges). The Court will now determine whether the mandatory Guidelines' residual clause is unconstitutionally vague.

### ii. Is the mandatory Guidelines' residual clause unconstitutionally vague?

ACCA's residual clause defined a "violent felony" as any felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). This clause, which is materially identical to the mandatory Guidelines' residual clause, *see* U.S.S.G. § 4B1.2(a)(2) (Nov. 2000), suffered from two fatal deficiencies. First, it left "grave uncertainty about how to estimate the risk posed by a crime" because it "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Johnson*, 576 U.S. at 597. Second, it left "uncertainty about how much risk it takes for a crime to qualify [under the clause]." *Id.* at 598. These deficiencies rendered ACCA's identically worded residual clause unconstitutionally vague.

The Supreme Court has invalidated two other residual clauses for unconstitutional vagueness. 18 U.S.C. § 16(b)'s residual clause, invalidated in *Dimaya*, defined a "crime of violence" as "a felony . . . that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Although § 16(b) did not contain the same wording as ACCA's residual clause, the Court determined that it nevertheless had "the same two features as ACCA's, combined in the same constitutionally problematic way." *Dimaya*, 138 S. Ct. at 1213. 18 U.S.C. § 924(c)(3)(B)'s residual clause, invalidated in *Davis*, also defined a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). The Court again had little

problem invalidating this language, despite superficial differences with the text of ACCA. *Davis*, 139 S. Ct. at 2336.

As already noted, the mandatory Guidelines' residual clause is materially identical to ACCA's. It defined a crime of violence as any felony that "involves conduct that presents a serious potential risk of physical injury to another." *See* U.S.S.G. § 4B1.2(a)(2) (Nov. 2000). This language required courts applying the career offender guideline to inquire into the amount of risk contained in the judicially imagined "ordinary case" of the defendant's predicate convictions and to measure that risk against some uncertain, judicially derived threshold. *See Johnson*, 576 U.S. at 597–98. The lesson of *Johnson* and its progeny is that this style inquiry inevitably produced "'hopeless indeterminacy' inconsistent with due process." *Dimaya*, 138 S. Ct. at 1213 (quoting *Johnson*, 576 U.S. at 598). Indeed, "*Johnson* is a straightforward decision, with equally straightforward application here." *Id.* Accordingly, rather than needlessly rehash *Johnson*, or spill ink on a question that the government does not even dispute, the Court concludes that the mandatory Guidelines' residual clause is unconstitutionally vague. *See Sumner*, 597 F. Supp. 3d at 139–40 (same); *Carter*, 422 F. Supp. 3d at 317 (same); *Hammond*, 351 F. Supp. 3d at 125–26 (same); *see also Shea*, 976 F.3d at 78–80 (same); *Cross*, 892 F.3d at 299–300 (same).

### 3. Mr. Arrington's Career Offender Designation

Mr. Arrington qualifies for an enhanced base offense level under § 2K2.1(a)(2) and career offender status under § 4B1.1 only if he is guilty of "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. §§ 2K2.1(a)(2), 4B1.1 (Nov. 2000). Because the mandatory Guidelines' residual clause is unconstitutionally vague, his predicate convictions must qualify as crimes of violence under either the "elements clause" or the "enumerated clause." Normally, this entails a detailed inquiry into each predicate offense, but the

government concedes that one of Mr. Arrington's prior armed robbery convictions—D.C. armed robbery—does not qualify as a crime of violence under either clause. Gov't Opp'n 37–38 (citing *Mathis v. United States*, 579 U.S. 500 (2016); *Descamps v. United States*, 570 U.S. 254 (2013); *Curtis Johnson v. United States*, 559 U.S. 133 (2010)). As a result, Mr. Arrington has at most one predicate crime of violence, which renders him ineligible for an enhanced base offense level under § 2K1.1(a)(2) and career offender status under § 4B1.1. Although Mr. Arrington challenges whether the instant crime of conviction—assaulting a federal officer with a dangerous weapon in violation of 18 U.S.C. § 111(a) and (b)—constitutes a crime of violence for § 4B1.1 purposes, the Court need not reach this question to grant Mr. Arrington's request for relief.[7] Absent the residual clause, Mr. Arrington's prior convictions are insufficient to sustain the career offender status under which he was sentenced. He is entitled to resentencing.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Mr. Arrington's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. It bears remembering that Mr. Arrington was convicted of perpetrating a terrible act of violence against a federal officer who was only doing his lawful duty. His conduct deserved a lengthy term of imprisonment, which Judge Robertson imposed, and which Mr. Arrington has now served. However, having surmounted the procedural barriers to his § 2255 motion, and having persuaded the Court that the mandatory Guidelines, unlike the advisory Guidelines, are susceptible to vagueness challenges, he is entitled to resentencing. The parties are directed to confer and submit jointly, by February 29, 2024, a proposed schedule to govern

---

[7] Despite the D.C. Circuit's holding to the contrary in *Redrick*, Mr. Arrington's post-remand supplemental brief called into question whether his conviction for Maryland armed robbery constitutes a crime of violence. *See* Def.'s Post-Remand Suppl. 6–7. He withdrew this argument after the Supreme Court of Maryland issued its decision in *Dickson v. United States,* 274 A.3d 366 (Md. 2022), which effectively confirmed that *Redrick* comports with state law.

resentencing proceedings for Mr. Arrington. The parties' joint submission should forecast any remaining issues that the Court will need to resolve at sentencing.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: February ___, 2024

Royce C. Lamberth
United States District Judge